HAMMER, Appellant, v. KLEGGER, Respondent. (Two cases.)

(210 N. W. 667.)

(File Nos. 5748, 5749.  Opinion filed November 15, 1926.)

**1.  Physicians and Surgeons.**

> Physicians held not negligent in not wearing sterilized gown and sterilized rubber gloves while examining patient and delivering child.

**2.  Physicians and Surgeons.**

> Evidence held insufficient to show physician was negligent in leaving fragments of placenta in patient's uterus after childbirth or that such conduct caused infection.

---

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Physicians and surgeons, Key-No. 15, 30 Cyc. 1587; **(2)** Physicians and surgeons, Key-No. 18(8), 30 Cyc. 1587.

Appeal from Circuit Court, Spink County; HON. ALVA E. TAYLOR, Judge.

Actions by Ivan W. Hammer and by Eleanor E. Hammer against Samuel A. Klegger. Judgments for defendant, and plaintiffs appeal. Affirmed.

*Van Slyke & Agor,* of Aberdeen, for Appellants.
*Sterling, Clark & Grigsby,* of Redfield, for Respondent.

POLLEY, J. These two cases were tried together and both submitted on the same evidence. Separate verdicts were returned, separate judgments were entered, and separate appeals were taken from the judgments, but both appeals were submitted on the same record and brief.

Eleanor E. Hammer, plaintiff in the one case, is the wife of Ivan W. Hammer, plaintiff in the other. Defendant is a practicing physician living in Mellette and engaged in the general practice of medicine in Mellette and in that vicinity.

Shortly prior to the 22d day of May, 1922, plaintiff Ivan W. Hammer engaged defendant to attend his wife through confinement and childbirth, expected to take place within a few days thereafter. Defendant was told that he would be notified when needed. He heard no more from plaintiffs until about midnight of May 21st, when he was called by plaintiffs and requested to come immediately. Plaintiffs lived some six or eight miles out in the country, but defendant went at once, arriving at plaintiffs' house at about 1 o'clock in the morning of May 22. He immediately made an examination of Mrs. Hammer and, being of the opinion that the birth of the child would not take place for several hours, sat down on a chair in the kitchen and went to sleep. He was called at about 5 o'clock and remained with the patient from that time for about an hour, during which time the child was delivered and the afterbirth removed. No complication of any kind arose. The mother and child were placed in charge of a woman who was there for the purpose of caring for them, and defendant took his departure. He did not make another call on the patient and was not expected to call. Eleanor Hammer testified that they made no arrangements with defendant to make another visit, and said that they did not desire that he come unless there were complications. Some three or four days later she had a chill followed by a fever, and becoming alarmed by these symptoms telephoned for defendant, but defendant could not be reached just

then, so they sent for Dr. Chase at Northville. He came and found Mrs. Hammer suffering from an absorption of poison or septicaemia. Her temperature and pulse were both abnormally high. He said her condition was serious and had her removed at once to a hospital he was conducting at Northville. On making an examination of the patient, he found the infection from which she was suffering was located in her uterus. She was quite sick for a few days but recovered rapidly, and at the end of 17 days was released from the hospital and went home. She claims that she has not fully recovered and that her health is permanently impaired; that she has suffered great pain and distress of body and mind; that her heart has become permanently injured and weakened, and that she will continue to suffer great pain, distress, and misery, and will remain in very delicate health for many months to come; that she has suffered permanent injury all because of the careless and negligent manner in which defendant treated her through her confinement and childbirth; and she brings this action against defendant for the recovery of $10,000 for her injury.

The husband, Ivan W. Hammer, claims that he has paid out large sums of money for physicians' services, drugs, medicines, etc., and that his wife's health has been permanently impaired to his damage in the sum of $2,000, and he brought a separate action for that amount.

At the close of plaintiffs' testimony, defendant made a motion for a directed verdict. This was denied, and the motion was renewed at the close of the testimony. This motion was denied, and the case was submitted to the jury. The jury returned verdicts for plaintiffs in both actions. The defendant then moved for judgment in both cases, notwithstanding the verdicts. These motions were granted and from the judgments entered thereon the plaintiffs appeal.

[1] It is claimed by plaintiffs that defendant was negligent in not wearing a sterilized gown and sterilized rubber gloves while he was examining the patient and delivering the child, and that, because of this failure, he might have introduced the germs that caused the infection. It is further claimed that, after Mrs. Hammer was removed to the hospital, Dr. Chase found a piece of afterbirth or placenta about the size of an egg in her uterus; that this was decomposed and might have been the cause

of the infection; that it was the duty of defendant to have made a sufficient examination of the afterbirth, when it was removed, to have ascertained that a portion of it still remained in the uterus and to have removed it; that, in failing to take this precaution defendant was guilty of actionable negligence.

Upon the first question of alleged negligence, the undisputed evidence shows that before defendant examined Mrs. Hammer or performed any other duty in connection with her confinement, he put on a sterilized rubber apron, that he washed his hands thoroughly with soap and water, and then dipped them in a lysol solution. Defendant testified that this was a sufficient precaution to prevent the introduction of disease germs, and that it was the common practice among the practitioners in that vicinity. In this he was corroborated by other reputable physicians practicing in the vicinity; and we are of the opinion that the trial court was warranted in holding with the defendant in this charge.

[2] Upon the charge that the infection might have been caused by leaving a fragment of the placenta in the uterus, the evidence was equally unsatisfactory. Dr. Chase, having had charge of the patient during her sickness, necessarily became the principal witness for the plaintiffs. He did not testify, however, that he believed Mrs. Hammer's infection was caused by the alleged negligent conduct of the defendant. He merely said that it might have resulted from said conduct. It was shown that the patient had pyorrhea, and the witness admitted that this might have caused the infection. It was shown that she had had the flu some two years prior to her confinement and that the flu frequently leaves the patient with a weakened and impaired heart. It was also shown that Mrs. Hammer was in somewhat of a run-down or weakened condition at the time of her confinement and that her infection might have been caused by the latent germs in the genital tract. And, finally, on cross-examination, Dr. Chase was asked this question:

"Now the other thing I want to be certain about in this connection is, if this were placental tissue and left in the womb, that you cannot say that that would be the cause of this septicaemia?"

To which he answered:

"Oh, no; I couldn't say positively that that was the cause of it."

"Q. And, as you say, this infection might have been caused by 40 other things? A. Might possibly have been; yes, sir."

This is as near to a certainty as the evidence comes to connecting Mrs. Hammer's sickness with any act or conduct of the defendant. There is no degree of certainty whatever that any negligence or alleged negligence of defendant caused her sickness. It is not shown by any satisfactory evidence that the conduct complained of constitutes negligence, or that such conduct caused the injury, if it were negligent, and the trial court was fully warranted in setting aside the verdicts and entering judgment for the defendant.

The judgments and orders appealed from are affirmed.

CAMPBELL and DILLON, JJ., not sitting.